# Law Offices of T. Stephen Song, P.C.

40-21 Bell Blvd., 2nd Floor, Bayside, NY 11361
Tel.: 718-321-0770   Fax:718-321-0799   framin@stephensong.net

June 30, 2020

**Via ECF**
The Honorable James L. Cott, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

>    Re:    *Hyuk Jin Seo  v. I.P.T Name and Design Inc. et al.*
>           *Civil Action Number: 1:19-cv-02202 (JLC)*
>           *Motion for Approval of Settlement*

Dear Judge Cott:

      This law firm represents Plaintiff, Hyuk Jin Seo ("Plaintiff"), in the above-captioned wage-and-hour action.  The parties jointly and respectively submit this letter motion to request Court approval of the settlement of Plaintiff's claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* and dismissal of this action in its entirety with prejudice pursuant to Cheeks v. Freeport Pancake House, Inc., 763 F.3d 199 (2d Cir. 2015) and Rule 41 of the Federal Rules of Civil Procedure. The parties have memorialized their resolution of the global claims amongst them in a Stipulation of Settlement and Release ("Settlement Agreement"), attached hereto as **Exhibit 1**, and a Stipulation and Proposed Order of Dismissal with Prejudice is attached hereto as **Exhibit 2** for the Court's consideration and approval.

## BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff commenced this action by filing a Complaint on March 11, 2019 (Dkt. No. 1), seeking: (1) unpaid minimum wages and unpaid overtime premium pay pursuant to the FLSA and the New York Labor Law ("NYLL") §§650, *et seq.*; (2) unpaid spread-of-hours pay; (3) damages for wage notice and wage statement violations pursuant to the NYLL; and (4) damages for her defamation claims against Defendants I.P.T Name and Design Inc. (d/b/a Tyche NYC), Eun Chul Shin (a/k/a Chris Shin a/k/a Diego Shin), John and Jane Does 1-10, and XYZ Corps 1-10.

### Plaintiff's Work with Defendants

      Plaintiff alleges that he worked for Defendant I.P.T Name and Design Inc. (d/b/a Tyche NYC) ("Tyche NYC"), Eun Chul Shin (a/k/a Chris Shin a/k/a Diego Shin) ("Shin") (collectively "Defendants") as a jewelry polisher. (Dkt. 1, ¶8).

In the Complaint, Plaintiff alleges that he worked from on or about 2007, until on or about January, 2019. (Dkt. 1, ¶22).

From on or about 2007 to on or about December of 2018, Plaintiff alleges that she worked approximately five (5) days per week, from before 9:00 a.m. until well past 7:00 p.m., usually an excess of 50 hours per week. Additionally, Plaintiff alleges that the Defendant required Plaintiff – every year – to work 70 hours per week beginning on Thanksgiving through and until Christmas in order for Defendants to keep up with the holiday demand. Plaintiff alleges he was never paid for minimum wages or overtime wages, nor was he provided with paystubs or other required notices.

From the period beginning on or about March of 2013 and continuing until on or about March of 2015, Plaintiff was scheduled to work five (5) days a week, usually working an excess of 50 hours per week. Plaintiff was paid a fixed salary of $600.00 per week. Plaintiff alleges that during this period he worked regularly in excess of 10 hours per day and is entitled to overtime pay, in addition to unpaid minimum wages and damages for violations of the notice requirements. (Dkt. 1, ¶25).

From the period beginning on or about March of 2015 until on or about November of 2016, Plaintiff did not work for the Defendant. (Dkt. 1, ¶26).

From the period beginning on or about November of 2016 and continuing until on or about March of 2018, Plaintiff was scheduled to work five (5) days a week, usually working an excess of 50 hours per week. Plaintiff was paid a fixed salary of $700.00 per week. Plaintiff alleges that during this period he worked regularly in excess of 10 hours per day and is entitled to overtime pay, in addition to unpaid minimum wages and damages for violations of the notice requirements. (Dkt. 1, ¶27).

From the period beginning on or about March of 2018 and continuing until on or about December of 2018, Plaintiff was scheduled to work five (5) days a week, usually working an excess of 50 hours per week. Plaintiff was paid a fixed salary of $800.00 per week. Plaintiff alleges that during this period he worked regularly in excess of 10 hours per day and is entitled to overtime pay, in addition to unpaid minimum wages and damages for violations of the notice requirements. (Dkt. 1, ¶28).

From the period beginning on or about December 1, 2018 and continuing until on or about December 31, 2018, Plaintiff was scheduled to work five (5) days a week, usually working an excess of 50 hours per week. Plaintiff was paid a fixed salary of $900.00 per week. Plaintiff alleges that during this period he worked regularly in excess of 10 hours per day and is entitled to overtime pay, in addition to unpaid minimum wages and damages for violations of the notice requirements. (Dkt. 1, ¶29).

Defendants appeared in this Action by way of filing an Answer with Affirmative Defenses on May 22, 2019. (Dkt. 16).

## Settlement Negotiations

Plaintiff provided his "best case" damage calculations to Defendants, totaling $122,404.90, including $61,202.45 in liquidated damages. Defendants categorically deny any wrongdoing and liability. Indeed, Defendants disputed Plaintiff's alleged dates of the

employment, the purported hours worked by Plaintiff and the amount of wages Plaintiff was paid. A litigation would be expensive and turn on different versions of oral understandings.

On July 9, 2019, the parties conducted a mediation session with Jacqueline James, Esq. The parties were not able to reach a settlement. During mediation, Defendants alleged that Plaintiff had violated an employment agreement and/or covenant with Defendants during his employment with Defendants. Defendants also provided a Bankruptcy Discharge for Individual Defendant Eun Chul Shin.

Thereafter, the parties engaged in continued settlement discussions and discovery. After substantive negotiations and discussions between the parties, the parties were able to reach an accord resulting in the Settlement Agreement.

Under the terms of the Settlement Agreement, Plaintiff has agreed to discontinue this lawsuit with prejudice, in exchange for, among other good and valuable consideration:

(1) Defendants agree to settle all claims brought by Plaintiff for the sum of $20,000.00 to the Plaintiff;

(2) Additionally, Defendants will pay the sum of $10,000.00 (Attorneys' Fees) to Plaintiff's counsel representing Attorneys' Fees in this action.

### Relevant Standard

In determining whether a proposed wage and hour settlement is fair and reasonable, the Court looks at a totality of circumstances, including, but not limited to, the following factors delineated by the Court: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations and internal quotations omitted).

### The Settlement Agreement was a Product of Arms'-length Bargaining, Accounts for Anticipated Burdens at Trial and Litigation Risk, Compensates Plaintiff for Damages, and Brings an Amicable Resolution to the Non-wage and hour Disputes between the Parties

As noted above, this is not the typical wage and hour dispute amongst the parties. During settlement negotiations, the parties disputed: (1) the amount of hours worked by Plaintiff; (2) Plaintiff's length of employment; and (3) alleged counterclaims Defendants had against Plaintiff for violating his employment agreement. Defendants also provided bank statements and financial records (including the Bankruptcy Discharge Defendant Eun Chul Shin). Although Defendants believe that most, if not all, of Plaintiff's claims in this case should be dismissed, Defendants realize that there is the potential risk for significant expenses and have made a cost benefit analysis that this case should be settled.

Notwithstanding Plaintiff's objections to the documentary evidence provided by Defendants in support of their defenses, Plaintiff faces obvious risks in establishing liability and damages should this case proceed. Indeed, Plaintiff is cognizant that some or all of his claims in

this case may be dismissed on summary judgment, and if any of his other claims survive summary judgment, the value of any recovery may be significantly less than originally anticipated. Plaintiff is aware that success in trial would depend solely on Plaintiff's testimony and credibility. Finally, the Settlement Agreement was reached in an extraordinary time while the world – particularly New York – dealt with the infamous COVID-19 pandemic. The parties are cognizant of the fact that businesses have been shut for over three-months causing employees and businesses to suffer.

Considering the aforementioned issues as well as the inherent risks of trial, the parties respectfully submit that the Settlement Agreement is a fair and reasonable settlement of Plaintiff's wage and hour claims in this action as well as a complete and final resolution of the global disputes between the parties.

The parties in this case were represented by experienced employment counsel. Plaintiff was represented by Stephen Song and Farzad Ramin of Law Offices of T. Stephen Song, P.C. Mr. Song has over eighteen years of employment law experience and Mr. Ramin four years of employment law experience. Likewise, Defendants' counsel, Levin-Epstein & Associates P.C., is a prominent employment lawyer with many years of experience handling wage and hour cases.

### The Terms of Settlement and Inclusion of a Mutual Non-Disparagement Agreement

As set forth in the annexed Settlement Agreement, the Parties have agreed to settle this instant action and all disputes amongst them in consideration for a total amount of $30,000. See Exhibit 1. While the settlement agreement does not contain any confidentiality provisions, it does include a limited mutual-non disparagement clause that includes "a carve-out for truthful statements about plaintiffs' experience litigating their case." Snead v. Interim HealthCare of Rochester, Inc., 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018).[1]

### Plaintiff's Attorneys' Fees and Expenses

In addition to reviewing the fairness and adequacy of the terms of the settlement agreement, the Court must also approve and assess the reasonableness of attorneys' fees. See Wolinsky, at 344 citing 29 U.S.C. §216[b]). The trend in the Second Circuit is toward the "percentage" method as opposed to the "loadstar" method, which the Second Circuit has noted that; "[It] is not perfect. It creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons also can create a disincentive to early settlement." McDaniel v County of Schenectady, 595 F3d 411, 418 (2d Cir. 2010). "A one-third contingency fee is a commonly accepted fee in this Circuit." Calle v Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014). While Plaintiff's counsel has a one-third retainer agreement with Plaintiff exclusive of fees, Plaintiff's counsel seeks only $10,000.00 inclusive of all fees and costs. Attached as **Exhibit 3** are the hours worked on this matter.

### The Court Should Find that the Settlement is Fair and Reasonable

For the reasons stated herein, the parties jointly and respectfully submit that the Settlement Agreement is fair, reasonable and an equitable resolution of this lawsuit. The attorneys worked very hard to spare the Court, the parties and the judicial system a time-

---

[1] The mutual non-disparagement clause uses the same exact language as the one analyzed by the Court in Snead.

consuming litigation.  Accordingly, the parties jointly and respectfully request approval of the Settlement Agreement.

Respectfully submitted,
**LAW OFFICES OF T. STEPHEN SONG, P.C.**

*/s/ Stephen Song*
Stephen Song


cc: all counsel of record (via ECF).